THE PEOPLE *ex rel.* B. F. ALEXANDER *v.* CHARLES H. SWIFT, PRESIDENT OF THE BOARD OF TRUSTEES OF THE CITY OF SACRAMENTO.

RATIFICATION OF CONTRACT BY MUNICIPAL CORPORATION.—In all matters in which a municipal corporation has power to contract, a subsequent ratification of a contract entered into on its behalf without authority, and which does not bind it, binds the corporation as effectually as though it had contracted in the first instance.

OUT OF WHAT REVENUES A CLAIM AGAINST SACRAMENTO IS TO BE PAID.— A demand against the City of Sacramento for work performed without any contract with the city, does not become a claim to be paid out of the revenues of the year in which it originated, until it has been assumed by an ordinance, and it is to be paid out of the revenues of the year in which it was assumed and not of the year in which the work was performed.

THIS action was commenced in the Supreme Court.

The Act of April 25th, 1863, created a municipal corporation called the City of Sacramento. The Act provided for the election of a Board of three Trustees, to have the management and control of the affairs of the corporation. An Auditor was also to be elected, whose duty it was to examine all claims against the city, and satisfy himself that they were correct, and due and unpaid, and were authorized by law, and then to indorse on the claim his approval and the fund out of which it was to be paid, and then draw his warrant on the Treasurer for the same. The Treasurer could not pay warrants drawn by the Auditor, unless the President of the Board of Supervisors signed the same ; and it was made the duty of the President to sign all warrants legally drawn, provided there was money in the fund sufficient to pay the same. The defendant, Swift, was President of the Board, and refused to sign the warrant drawn in favor of relator. There were certain issues of fact raised by the pleadings, and the matter was

referred to a referee to take the testimony and find upon these issues.

The other facts are stated in the opinion of the Court.

*Moore & Alexander*, for Relator, argued that the Act incorporating the City of Sacramento gave the Board of Trustees power to repair the Police Court room, and that, possessing such power, they also had power by ordinance to ratify a contract for such repairs, entered into without authority. They also argued that the city, having accepted of the labor and materials, was liable upon an implied promise to pay what the work was worth; and cited *Abbott* v. *Inhabitants of Third School District*, 7 Greenl. 96; *Smith* v. *Mayor of Sacramento*, 13 Cal. 531; *Brady* v. *Mayor, etc.*, 1 Barb. S. C. 584; and 10 Mass. 397.

*Charles H. Swift*, in *pro per.*, for Defendant, argued that, as the relator performed the work and furnished the materials without any authority from or contract with the Board of Trustees, that the claim was not a legal one, and that the Trustees were under the same obligation to reject an illegal claim as to allow a legal one; and cited Laws 1863, p. 418, Sec. 2, Subdiv. 22. He also argued that the powers granted to a corporation could only be exercised in the manner prescribed in the Act of incorporation, and that the Act incorporating Sacramento did not authorize the Board to ratify a contract.

By the Court, SHAFTER, J.:

This is an application for a peremptory mandamus against the respondent, as President of the Board of Trustees of the City of Sacramento, to compel him to sign a certain warrant drawn by the Auditor on the Treasurer of said city for the sum of five hundred and seventy-four dollars and thirty-eight cents, for work done and materials furnished by the relator in repairing and improving the Police Court room of said city.

The referee to whom the case was sent to find and report

the facts, has found that the services constituting the basis of the relator's claim were not performed under any contract binding upon the city. The relator acted under the direction or on the suggestion of one, or perhaps two, of the three Trustees, but he was not employed by the Board as such. After the work had been performed, however, the Board of Trustees accepted the job as having been performed on the city's account; and in the clear exercise of powers conferred upon them by the charter "to make by-laws and ordinances not repugnant to the Constitution of the United States or of the State of California" (Stat. 1863, p. 416), and "to provide for all necessary public buildings, parks or squares necessary or proper for the use of the city" (Ib. 417), and "to improve and take care of the real estate and personal property of the city" (Ib. 416), and "to examine and liquidate all accounts against the city and to allow or reject the same or any part thereof as it is found legal or illegal" (Ib. 418), the Board passed an ordinance on the 17th of July, 1864, appropriating from the General Fund the sum of five hundred and seventy-four dollars and thirty-eight cents for the payment of the claim.

This subsequent ratification by the Board, within their powers, and according to the method of contracting pointed out in the charter, bound the city as effectually as an employment in advance would have done. (*McCracken* v. *San Francisco*, 16 Cal. 592; *Zottman* v. *San Francisco*, 20 Cal. 96.)

Subsequent to this ratification and on the 14th of August, 1864, a bill of items was made out by the relator, and presented to the Trustees, by whom it was allowed, and on the same day the claim was approved by the Auditor (Acts 1863, p. 421, Sec. 9), and thereupon a warrant for the amount, payable out of the General Fund, was drawn by the Auditor in favor of the relator.

The respondent justifies his refusal to sign this warrant, not only upon the ground that there was no contract binding the city to pay the relator's claim, a point already considered, but also upon the ground that the claim when presented for allow-

ance was not in the form prescribed by law, in that it did not refer to any law, order or contract authorizing it, and that the Board of Trustees exceeded their authority in allowing the demand without such reference.

This objection is not well founded in fact. It appears distinctly from the report and accompanying evidence that the relator's claim, after it had taken on that shape by the ratification of July 17th, was presented to and allowed by the Board on the 14th of August, and that the written claim so presented contains a distinct reference to the ratifying ordinance and to the second section of the charter as authorizing it.

It is further objected that the claim originated in the year 1863, when the relator was authorized by one of the Trustees to do the work in question, and that it can be paid, under the charter, only from the revenues of that year. The objection is founded upon an anachronism. The claim had no existence as such prior to the 17th of July, 1864, at which date the Board of Trustees assumed it by ordinance, and the referee has found that at the time when the claim was allowed there was the sum of five thousand six hundred and fifty-two dollars and sixteen cents unappropriated in the fund on which the claim was charged by the ordinance and on which the warrant was drawn.

Let a peremptory mandate issue, according to the prayer.

Mr. Justice SANDERSON expressed no opinion.