## HENRY MEUSER v. JOHN N. RISDON and WILLIAM WARE.

CONTRACT FOR GRADING STREETS IN SAN FRANCISCO.—When the person who has contracted to grade a street in the City of San Francisco fails to perform the work, and it becomes necessary or expedient to relet the job, the same course must be pursued in reletting which is prescribed in the first instance by the sixth section of the statute in relation to the improvement of streets in San Francisco.

IDEM.—In case of such reletting, the Clerk of the Board of Supervisors, as such, has no power to give the notice inviting proposals for the work, nor does the original resolution of the Board inviting proposals confer such authority, nor can the Board confer such authority on him by a general resolution directing him in all cases where contractors fail to perform to re-advertise for proposals.

IDEM.—Each proceeding to improve a street in San Francisco, whether in relation to the first contract or a reletting on the failure of the first contractor to perform, is a separate and independent proceeding, and must stand or fall by itself.

BOARD OF SUPERVISORS CANNOT DELEGATE ITS POWERS.—The Board of Supervisors of San Francisco cannot by resolution transfer its appropriate functions to its Clerk.

RATIFICATION BY A CITY.—So far as the lot owner is concerned, the City of San Francisco cannot, by its act, ratify proceedings taken to grade a street and impose an assessment on the lot for the same, so as to make the same valid, when they were invalid in the first instance. The power of ratification, if it exists, is in the Legislature.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

This was an action to recover eight hundred and fifty-eight dollars and fifty-five cents, the amount of an assessment levied on lots in San Francisco for grading the street opposite to their fronts. The complaint asked that the above amount be decreed a lien on the lots, and that they be sold. No personal judgment was prayed for.

The case was tried by the Court below on the following agreed statement of facts:

The Board of Supervisors of the City and County of San Francisco, having regularly declared their intention to macadamize Valencia street from Market to Fourteenth, and having acquired jurisdiction to order the same to be done, passed the resolution ordering the same to be done on the 12th day of June, 1865.

Said Board having ordered the said work to be done, as aforesaid, and having caused a notice inviting sealed proposals for doing the said work to be posted and published as required by law, and proposals therefor having been made, did, on the 17th day of July, A. D. 1865, award the contract for doing the said work to one J. H. Shafer, notice of which award was published as required by law; and on the 19th day of July, A. D. 1865, the owners of the major part of the frontage of lots and lands liable to be assessed for said work elected to take the said work, and did, on the 19th day of July, A. D. 1865, enter into a written contract with the Superintendent of Public Streets and Highways to do the whole of said work, at the price at which the same was awarded to the said J. H. Shafer. The said owners having entered into the contract to do the said work, as aforesaid, did not do the same, but utterly failed to perform the said contract. Afterward, the Clerk of the Board of Supervisors gave a notice, by posting and publishing in the proper place and newspaper, inviting sealed proposals for doing the said work. The Board did not authorize the Clerk to give the said notice, and did not in any manner cause the said notice to be given, unless that the resolution ordering the said work, passed on the 12th day of June, A. D. 1865, in which were these words: "and the Clerk of this Board is hereby directed to advertise for proposals for doing the said work," conferred such authority upon the Clerk, and unless such authority was conferred by the following resolution, which was passed by the Board of Supervisors on the 15th day of August, 1864, viz: "*Resolved*, That the Clerk of this

Board be and is hereby authorized, under the direction of the Committee on Streets, Wharves, Grades, and Public Squares, to re-advertise for proposals for street work for which no bids shall have been received, or wherein contractors shall have failed to perform work awarded to them or to execute contracts entered into."

On the second day of October, 1865, John Henry entered into a contract with the Superintendent of Public Streets to do the said work, and having completed the same, on the 17th day of August, 1866, the said Superintendent delivered to him a document purporting to be an assessment upon the lots and lands fronting upon the said work, which is in the usual form in which such documents have been prepared by the said Superintendent. A warrant, in the form prescribed by the statute, was attached thereto. The said document and warrant were, before they were delivered to the said contractor, copied into one of the books kept in the office of the Superintendent of Streets, and purporting to be a Record of Warrants, Assessments, and Returns, but that the said copy was not signed by the said Superintendent, or authenticated in any manner by any one. Upon the aforesaid warrant an affidavit of demand and non-payment was made, in due form and time.

The plaintiff is the assignee of the aforesaid John Henry. The defendants are and have been the owners of the lots described in the complaint at all times since the first day of January, A. D. 1866, and the said lots comprise the entire block of land lying between Valencia, Hermann, and Ridley streets.

The plaintiff recovered judgment, and the defendants appealed.

The other facts are stated in the opinion of the Court.

*Jarboe & Harrison,* for Appellants

The assessment in question conferred no rights in favor of

the plaintiff, and created no lien upon the lots described in the complaint, for the reason that the Superintendent had no authority to enter into the contract with the plaintiff's assignor.

Before the Board of Supervisors could again award a contract for doing the said work, they must follow all the steps originally requisite, after they had ordered it to be done.

Section six of the Act (Stats. 1862, p. 393,) declares that "if the owners who may have taken said contract do not complete the same, * * * the Superintendent shall report such delinquency to the Board of Supervisors, who may relet the unfinished portion of said work, after having pursued the formalities of this section, as stated aforesaid."

In the present case, however, there is an additional reason why the Clerk is not authorized to give the notice without authority. A second contract can be awarded only "if the owners do not complete the same," and then only after the Superintendent has reported such delinquency to the Board of Supervisors.

The Clerk is not authorized to determine whether the failure has in reality occurred, nor is he authorized to act upon the report of the Superintendent. The Superintendent is to report the delinquency to the Board of Supervisors, and, after such report, they are to determine whether there is such a delinquency as to be visited with a rescission of the contract, or whether they will grant further time to do the work. It by no means follows that because the Superintendent reports the delinquency to the Supervisors, they are bound to award the contract to another person. They may conclude to abandon the work. But, whatever may be their disposition, it is an exercise of judicial discretion which has been intrusted to them, and which no one else can assume for them, and which they cannot delegate to another.

*Sharpstein & Hastings,* for Respondent.

It was not necessary for the Board of Supervisors, in this

·case, before awarding the contract the second time, to take all the steps which they were required to take before awarding it in the first instance. (*Dougherty* v. *Foley*, 32 Cal. 402.)

In the resolution ordering the work, the Clerk of the Board was directed to advertise for proposals. And, by a resolution of the Board of August 15th, 1864, said Clerk is authorized in all cases like this to re-advertise, etc. Besides, the Board ratified the action of the Clerk by receiving the proposals handed in under it, and by awarding the contract to the lowest bidder. (*Hoyt* v. *Thompson*, 19 N. Y. 218; *Peterson* v. *The Mayor of New York*, 17 N. Y. 449; *Smith* v. *The Mayor of New York*, 21 How. Pr. 1; *People* v. *Swift*, 31 Cal. 26; *McCracken* v. *City of San Francisco*, 16 Cal. 592; *Zottman* v. *City of San Francisco*, 20 Cal. 96.)

By the Court, SANDERSON, J. :

The sixth section of the statute in relation to the improvement of streets in San Francisco (Stats. 1862, p. 393) provides among other things that the Board of Supervisors, before giving out contracts for street work, shall cause public notice to be given, in the manner therein directed, inviting sealed proposals for the performance of the work contemplated; that the Board shall award the contract to the lowest responsible bidder; that notice of the award shall be published for a certain time, within which the owners of the major part of the frontage may elect to take the contract; that if the owners take the contract, but fail to commence the work within a certain time, the Superintendent shall contract with the original bidder to whom the work was awarded, but if the bidder neglect for a certain time to enter into a contract, the Board of Supervisors shall again publish for proposals, the same as in the first instance; that if the owners taking the contract enter upon its performance, but fail to complete it within the time fixed by the contract, or such extensions of time as may have been granted by the Board of Super-

visors, the Superintendent shall report their delinquency to the Board of Supervisors, who may relet the unfinished work, after having pursued the formalities provided for in the first instance.

From these provisions of the statute it is plain that where, from a failure on the part of the contractor or owners to perform the work, it becomes necessary or the Board deems it expedient to relet the contract, the same course must be pursued which is prescribed for the letting in the first instance; that is to say, the Board must move in the matter by passing an order directing notice of the letting to be published and inviting bids. The Clerk of the Board, of his own motion, has no power in the premises, his relation to the second or any subsequent letting being the same as to the first. In the present case the Board made no order for the second letting. This defect cannot be cured by any general order of the character of that of the 15th of August, 1864. The Board has no power to make general orders, applicable alike to all future proceedings. Each proceeding to improve streets in San Francisco is necessarily a separate and independent proceeding, and must stand or fall by itself. A general order of that character involves a transfer by the Board of its own appropriate functions to its Clerk, for its effect is to cast upon that officer the power to determine whether the contingency provided for by the statute has arisen. But were it otherwise, the present case would not be relieved, for it appears that the Clerk was not even directed to advertise for bids by the Committee on Streets, Wharves, Grades, and Public Squares, as provided by the general order in question.

So far as the lot owner is concerned, these proceedings are but steps taken for the purpose of imposing upon him a tax for a specific purpose, as we have repeatedly held. (*Emery* v. *The San Francisco Gas Co.*, 28 Cal. 345; *Emery* v. *Bradford*, 29 Cal. 83; *Hendricks* v. *Crowley*, 31 Cal. 474.) To such proceedings the doctrine of ratification invoked by respondent has no application. If this was an action by the contractor

against the city to recover the contract price, the rule in the case of *The People* v. *Swift,* 31 Cal. 26, would be in point, and it might be that the subsequent proceedings of the Board in awarding the contract would be held to be a ratification of the unauthorized act of their Clerk. But such is not the case. The plaintiff sues as the assignee, or in the place of the city, to collect a tax levied by her, and, like her, he must show that the entire proceedings on the part of the city have been in strict conformity with the statute under which she worked. (*Hendricks* v. *Crowley, supra.*) If any of the steps taken were invalid, or not according to the statute, no subsequent act on the part of the city could render it valid. Whatever power of ratification or confirmation may exist in such cases exists in the Legislature alone

Judgment reversed.