[Civ. No. 2870. First Appellate District, Division One.—July 16, 1919.]

## WARREN BROTHERS COMPANY (a Corporation), Appellant, v. THOMAS F. BOYLE, as Auditor, etc.; Respondent.

[1] STREET LAW—SAN FRANCISCO—IMPROVEMENT OF ACCEPTED STREET. The city and county of San Francisco has authority, under its charter, to improve an accepted street under the direction and control of its board of public works.

[2] ID.—DUTY TO KEEP IN REPAIR AND IMPROVE.—The duty to keep in repair and improve its duly accepted streets, or portions thereof, is imposed upon the city and county of San Francisco by its charter.

[3] ID.—ORDERING OF WORK BY SUPERVISORS—WRITTEN RECOMMENDATION BY BOARD OF PUBLIC WORKS.—Application for the doing of any street work, or improvement, must, in the first instance, except as otherwise provided in the charter, be made by the proper parties to the board of public works, which may in turn recommend that the work be done. No street work, or improvement of any kind, can be ordered by the supervisors to be done unless a written recommendation to do the same has been made to them by the board of public works, except that in case an application is made for any work or improvement the expense of which is to be paid by the city and county, and the board of public works shall not approve of the application, and it shall report to the supervisors its reasons for such disapproval, the supervisors may then, after having obtained from the board of public works an estimate of the expense of the work or improvement, by ordinance passed by the affirmative vote of not less than fourteen members of the board, order that the work be done.

[4] ID.—WHEN BOARD OF PUBLIC WORKS MAY RECOMMEND—ESTIMATE OF EXPENSE.—Under the charter of the city and county of San Francisco, the board of public works may recommend any improvement the expense of which is to be paid by the city and county, though no application may have been made therefor, but must make, with such recommendation to the supervisors, an estimate of the expense.

[5] ID.—IMPROVEMENT OF STREETS—PAYMENT OF EXPENSES.—Under the charter of the city and county of San Francisco, the expense of all work, or improvement, done on streets, crossings, and intersections of streets, that have been accepted by the city and county, after the acceptance of the same, and all repairs and improvements deemed of urgent necessity that may be made upon the public streets, shall be borne and paid for out of the general

fund of the city and county. The expense of all other street work and improvement, except certain emergency repairs done at the expense of the owner of the property, shall be assessed upon, the lots and lands fronting on the street improved, according to the nature and character of the work.

[6] ID.—MANNER OF HAVING WORK DONE—PURCHASE OF MATERIALS—DISCRETION OF BOARD OF PUBLIC WORKS.—The board of public works of the city and county of San Francisco, after having made its recommendation to the board of supervisors that a certain accepted public street be reconstructed and improved in a given manner and the latter board has ordered that the work be done, may do such work under contract, or by and through its own organization, purchasing the materials therefor.

[7] ID.—APPROPRIATION OF MONEY TO DEFRAY EXPENSE—INSUFFICIENT ORDER THAT WORK BE DONE.—Neither the action of the board of supervisors in carrying an item into the annual budget for the estimated cost of certain work, nor its later action in making direct appropriation of the sums of money needed to defray the expense thereof, constitutes an order that the work be done.

[8] ID.—RIGHT TO USE PATENTED MATERIALS.—Patented composition, or mixture, may be used in the improvement of accepted streets in the city and county of San Francisco, if called for by proper jurisdictional procedure.

[9] ID.—CHARTER PROVISIONS APPLICABLE TO ALL WORK.—The provisions of section 26, chapter 2, article VI, of the charter of the city and county of San Francisco, relating to the use of patented pavements in the improvements of streets, is not confined to street work on unaccepted streets.

[10] ID.—EFFECT OF ORDINANCE OF RATIFICATION.—An ordinance passed by the board of supervisors of the city and county of San Francisco ratifying, approving, and confirming the purchase by the board of public works of certain patented paving material used in the improvement of an accepted public street, has the effect to cure the omission of the board of supervisors, in the first instance, to order the work of improving the street, and the laying thereon of such patented material.

[11] ID.—USE OF MATERIALS — FAILURE TO COMPLY WITH CHARTER PROVISIONS—LIABILITY—ESTOPPEL.—Where a municipal corporation, through its duly authorized representatives, enters into a contract with the owner of a patented paving material for the purchase and use of a quantity of such material in the improve-

8. Right of municipality to contract for patented or monopolized article under contracts required by law to be let at public bidding, notes, 3 Ann. Cas. 745; 7 Ann. Cas. 107; 8 Ann. Cas. 396; 10 Ann. Cas. 709; Ann. Cas. 1915B, 460; Ann. Cas. 1916D, 245; 46 L. R. A. (N. S.) 990; L. R. A. 1917A, 442.

ment of an accepted street, and such material is so furnished and used, such municipality, having received the benefit, will be estopped from relying on the plea that in making the contract it has not proceeded in strict conformity with some part of the complicated internal machinery of its complex corporate organization.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Geo. A. Sturtevant, Judge. Reversed.

The facts are stated in the opinion of the court.

Frank English for Appellant.

Edward F. Moran for Respondent.

George Lull, City Attorney, Maurice T. Dooling, Assistant City Attorney, and John B. Gartland, *Amici Curiae.*

WASTE, P. J.—Plaintiff sought a writ of mandate to compel the defendant to allow certain claims alleged to be due for material furnished the city and county of San Francisco, and used in the improvement of Mission Street, a duly accepted public street in said city. The trial court denied the petition and this appeal, taken upon the judgment-roll, is from that judgment. The findings of fact, together with the allegations of the pleadings, not denied, constitute the record for the purposes of this appeal.

The board of public works of the city and county of San Francisco recommended to the board of supervisors the improvement of the roadway of Mission Street, easterly from Fourth Street, by constructing thereon a certain pavement. The board of supervisors, in acting upon this recommendation, carried an item into its budget for the fiscal year 1917–18, for the amount of thirty thousand dollars, for the performance of the work, and thereafter, by proper resolution, specifically set aside and appropriated that amount for the said improvement. The board also thereafter set aside and appropriated to the board of public works the sum of $23,375 out of the urgent necessity fund for the fiscal year 1917–18, for repairs, reconstruction, and paving of streets.

The board of public works in proper manner transferred, set aside, and applied said amount of money for the recon-

struction of Mission Street. The board of public works, by and through its own department organization, then proceeded to reconstruct and improve Mission Street, easterly from Fourth Street, by removing therefrom the existing pavement of basalt blocks, constructing in lieu thereof a concrete pavement with a wearing surface of the material best adapted, in the judgment of the board, to meet the conditions created by the traffic in said street.

For the purpose of providing for this wearing surface and as a necessary and desirable ingredient for the pavement, the board of public works, on the twentieth day of August, 1917, entered into a contract with petitioner to purchase for and on behalf of the city and county of San Francisco a quantity of certain material constituting such wearing surface for the pavement, which material, petitioner alleges, was a proprietary and patented article, the patents to which were controlled by it. No proposals calling for competitive bidding for the furnishing of the paving material were invited. The price agreed to be paid for this material was seven dollars per ton. Petitioner furnished to the city, and the city used and incorporated in the reconstruction of the pavement on Mission Street, such material to the value of $7,756. Claims against the city for the amount were presented by the petitioner.

After a previous approval thereof by the board of public works, the board of supervisors approved the demands on the treasury of the city and county for the specified sum, for the quantity of petitioner's paving material delivered and used. Each of these demands was in an amount less than five hundred dollars, and all of them were based on the contract price of seven dollars per ton, for the materials delivered. The auditor refused to audit the claims.

There was subsequently regularly adopted and passed by the board of supervisors an ordinance which ratified and approved and confirmed the action of the board of public works in the reconstruction of the pavement on Mission Street, and all the proceedings had and taken by the board of public works in relation thereto. The ordinance specifically appropriated and authorized to be expended out of the funds set aside and appropriated by the board of supervisors for improving Mission Street the sum of $7,756, for

payment to the appellant for the materials furnished by it to the city and county.

By stipulation at the trial of the action, the amount of the claims against the city was reduced to $5,764, being the aggregate amount of twelve different claims approved by the board of public works and the board of supervisors. The occasion for this reduction appears to have been certain claims by way of setoff on the part of the city, which were agreed to by appellant.

The lower court reached the conclusion, first, that the city and county was not permitted by its charter to perform the work in question, and that as the requirements of that instrument relating to award of contracts, and purchase of supplies, had not been complied with, no legal obligation rested upon the municipality to pay the claim of petitioner. The findings relied upon to support that phase of the court's determination are that the board of supervisors of the city and county of San Francisco did not order, or authorize by ordinance, the board of public works to improve or repair Mission Street, except as such authorization might be gathered from its action on the recommendation of the board, in appropriating the money therefor; that the board of supervisors did not authorize the purchase of any materials from the plaintiff, except as such authorization might be found in the same proceedings; that no proposals were invited for competitive bids; and that the board of public works did not at any time pass a resolution determining that the material delivered by petitioner was necessary for street repairs or improvements.

Appellant challenges the correctness of the court's conclusion, and contends that by virtue of section 14, chapter 1, article VI, of the charter of the city and county of San Francisco, the board of public works has the power to, and in the instant case did, improve a duly accepted street, by and through its own departmental organization, freed from the necessity of following the requirements of the charter in the matter of awarding contracts therefor. That section provides as follows: ''All public work authorized by the Supervisors to be done under the supervision of the Board of Public Works shall, *unless otherwise determined by the Board of Public Works* [the italics are ours], be done under written contract, except in case of urgent necessity as

héreinafter provided; and except as otherwise specifically provided in the charter, the following proceedings shall be taken in all cases of letting contracts by said Board. Before the award of any contract for doing any work authorized by this Article, the Board shall cause notice to be posted conspicuously in its office for not less than five days, and published for the same time, inviting sealed proposals for the work contemplated; except, however, that when any repairs or improvements, not exceeding an estimated cost of five hundred dollars, shall be deemed of urgent necessity by the Board, such repairs or improvement may be made by the Board under written contract or otherwise, without advertising for sealed proposals.''

[1] That the city and county of San Francisco has authority, under its charter, to improve an accepted street, under the direction and control of its board of public works, seems to be settled. Chapter 1, article VI, provides, in part, as follows:

''Sec. 9. The Board of Public Works shall have charge, superintendence and control, under such ordinances as may from time to time be adopted by the Supervisors:

''1. Of all public ways, streets . . . and of all work done upon, over, or under the same;

''Sec. 3. (The board of public works) may employ such clerks, superintendents, inspectors, engineers, surveyors, deputies, architects and workmen as shall be necessary to a proper discharge of their duties. . . .

''Sec. 22. The work in this Article provided [improvement of streets, among other things] must be done under the direction and to the satisfaction of the Board of Public Works; and the materials used must be in accordance with the specifications . . . of said Board.''

Construing provisions of the charter of the city of Los Angeles in part identical with, and similar as to the remainder to, the above-quoted section, but relating to ''the design, construction, maintenance, and use of all sewers,'' and ''the design, construction, alteration, repair, maintenance, and care of all public works and improvements, and of all public buildings belonging to the city'' (charter of the city of Los Angeles, art. XIV, sec. 146, subds. 1, 2, and 4), the supreme court of this state, in an opinion by Chief Justice Angellotti, decided that the city of Los Angeles had

the power to construct an outfall sewer, involving an aggregate expenditure of more than five hundred dollars, ''without letting any contract therefor, in other words, by day's labor, under the authority and control of the city board of public works, purchasing such material as it may require therefor.'' (*Perry* v. *City of Los Angeles,* 157 Cal. 146, [106 Pac. 410].)

[2] The duty to keep in repair and improve its duly accepted streets, or portions thereof, is imposed upon the city and county of San Francisco by the charter. (Sec. 23, c. 2, art. VI.) By subdivision 2, section 1, chapter 2, article II of the charter, the board of supervisors is given general power ''to regulate and control for any and every purpose, the use of the streets . . . and sidewalks of the city and county.'' By section 1, chapter 2, article VI, the same board is ''empowered to fix the width and grade thereof, and to order done therein and thereon any and all street work and street improvement under the proceedings'' in that chapter described. These proceedings, it may be here noted, are the various steps to be followed by the board of public works and deal entirely with work or improvement the expense whereof is to be assessed according to the nature and character of the work upon the property benefited (subd. 2, sec. 9, c. 2, art. II), and do not, in our judgment apply to the improvement of, or work upon, accepted streets, the entire expense of which must be paid by the city and county.

[3] Application for the doing of *any* street work, or improvement, however, must, in the first instance, except as otherwise provided in the charter, be made by the proper parties to the board of public works, which may in turn recommend the work to be done. No street work, or improvement of any kind, shall be ordered by the supervisors to be done unless a written recommendation to do the same has been made to them by the board of public works, except that in case an application is made for any work or improvement the expense of which is to be paid by the city and county, and the board of public works shall not approve of the application, and it shall report to the supervisors its reasons for such disapproval, the supervisors may then, after having obtained from the board of public works an estimate of the expense of the work or improvement, by ordi-

nance passed by the affirmative vote of not less than fourteen members of the board, order the work done.  [4]  The board of public works may recommend any improvement the expense of which is to be paid by the city and county, though no application may have been made therefor, and must make, with said recommendation to the supervisors, an estimate of the expense.  In such cases the supervisors may order the same done.  (Sec. 2, c. 2, art. VI of the charter.)

[5]  The expense of all work or improvement done on streets, crossings, and intersections of streets that have been accepted by the city and county, after acceptance of the same, and all repairs and improvements deemed of urgent necessity that may be made upon the public streets, shall be borne and paid for out of the general fund of the city and county.  (Section 8 of the chapter and article last mentioned.)  The expense of all other street work and improvement, except certain emergency repairs done at the expense of the owner of the property, shall be assessed upon the lots and lands fronting on the street improved, according to the nature and character of the work.  (Section 9 of the same chapter and article.)

[6]  It seems reasonable to conclude, therefore, starting with the premise we have reached, that the city and county has power to do the work in question; that all that was necessary in the present instance, to legally initiate the proceeding for doing the work, was for the board of public works to recommend to the board of supervisors, and for that board to order, that the work be done; that, so much accomplished, the board of public works, acting for the city and county, was in position to either do the work under contract, or by and through its own organization, purchasing the materials therefor.  (*Perry* v. *City of Los Angeles, supra.*)

[7]  The first step was duly taken.  The board of public works in writing made recommendation to the board of supervisors that the work be done.  The record fails, however, to furnish evidence that the second requirement was directly performed.  The allegation of the complaint, not denied by the answer, is merely that "the said Board of Supervisors did act upon said recommendation of the Board of Public Works by fixing and allowing in its budget for the fiscal year 1917–1918 an item of expenditure (No. 66) in the

amount of thirty thousand ($30,000) dollars for the reconstruction of Mission Street easterly from Fourth street." This allegation is followed by a recital of the fact that "thereafter, and by Resolution No. 14,579, new series, approved July 17, 1917, the said Board of Supervisors did set aside, appropriate and authorize to be expended out of said special budget allowance (No. 66), the sum of thirty thousand ($30,000) dollars" as appears from the copy of the resolution made a part of the complaint, "for the reconstruction of Mission Street easterly from Fourth Street." The trial court found, as before stated, "that the board of supervisors of the city and county did not at any time before the delivery by plaintiff of the said paving material, order, or authorize by ordinance, the board of public works to improve or repair Mission Street, . . . or the laying of the said pavement, or of the said paving material, or the purchase of any materials from plaintiff, except as such authorization" might be found in the recommendation made by the board of public works, and the subsequent action of the supervisors in carrying an item into the annual budget for the estimated cost of the work, and its later action in making direct appropriation of the sums of money needed to defray the expense thereof.

Our conclusion is in harmony with the decision of the lower court, to the effect that these proceedings do not present facts sufficient to warrant a finding that the board of supervisors, in the present case, "ordered" the work of improving Mission Street to be done, or the materials necessary therefor to be purchased at any time prior to the doing of the work or the furnishing of the materials. The so-called ratification ordinance, to which we shall hereinafter refer, in its preamble contains the important admission on the point, when it recites: "Whereas, The Board of Public Works, in view of a necessity, existing for an immediate performance of the said work, and without a formal order of this Board in that behalf, did by and through its departmental organization" do the particular work, describing it.

Under the provision of the charter, hereinbefore quoted, the board of public works is given authority to do work of the nature involved here "under such ordinances as may from time to time be adopted by the supervisors." The

direction and control of the board of supervisors is, by this
direct language of the charter, impressed upon whatever
action the board of public works may take in pursuance of
the authority granted thereby. That fact seems manifest
from even a cursory reading of the section itself. The
supreme court has so held. In construing the very broad
powers of the board of public works, as related to public
utilities, owned and operated by the city and county, and
which power is expressly granted by the section of the
charter we are now considering, Mr. Justice Wilbur, speak-
ing for the court in *Vale* v. *Boyle,* 179 Cal. 180, [175 Pac.
787], said: ''Under the charter provisions concerning public
utilities, the city and county of San Francisco, through its
board of public works, is acting in a proprietary and not
in a governmental capacity, and it may well be assumed
that in placing such utilities in charge of the boards of the
city, it was contemplated that so far as consistent such
board should have the usual powers incidental to the opera-
tion of such public utilities, including the power to purchase
the necessary supplies and equipment, this power to be exer-
cised under the charter of the city of San Francisco by the
board of public works, under such limitations as may from
time to time by ordinance be prescribed by the board of super-
visors. (Sec. 9, subd. 8, charter, *supra.*) While it is true
that this general consideration alone should not control the
express language of section 1, chapter 3, article II, of the
charter, if applicable thereto, it aids us in construing such
general provisions of the charter concerning the purchase of
supplies, etc., to consider that they were adopted for the
purpose of regulating the conduct of the board of super-
visors of San Francisco, acting in their governmental capa-
city.'' The court then held that the charter having given
the board of public works ''charge, superintendence, and
control'' of public utilities, in a proprietary capacity, the
board was authorized to purchase, in conformity with the
ordinance of the board of supervisors, certain automobile
buses required, and that the limitations contained in section
1, chapter 3, article II, of the charter, relating to the man-
ner of purchasing supplies, and awarding of contracts in the
ordinary case of governmental affairs, did not apply.
(*Vale* v. *Boyle, supra.*)

As we understand them, in neither of the foregoing decisions does the supreme court go so far as to hold that the charter requirements relating to the purchase of supplies can be dispensed with. In the Vale case Mr. Justice Wilbur lays emphasis upon the fact that, while the authority of the board of public works is derived from the charter, its activities are confined within the scope of such directions by ordinance as the board of supervisors may from time to time adopt, as in that case was actually done. The real point determined in the case of *Perry* v. *Los Angeles,* 157 Cal. 146, [106 Pac. 410], as stated by the court in the opinion, was "whether the city may itself do such work without letting any contract therefor, in other words, by day's labor," purchasing such material as it may require. The manner in which the materials for the construction of the outfall sewer were to be purchased was not referred to in the opinion. That question does not appear to have been in issue. The opinion, however, does say, in discussing two sections of the charter of Los Angeles, in substance the same as the provisions contained in the organic instrument of San Francisco, "the charter provisions undoubtedly require that whenever it is proposed to make an agreement for the purchase of certain materials or supplies, for a sum exceeding five hundred dollars, or to make an agreement with another by which he is to furnish such labor for a sum of money exceeding five hundred dollars, a written contract must be let and entered into in the manner prescribed." (*Perry* v. *City of Los Angeles, supra.*)

By section 31, chapter 2, article VI, of the charter, the board of public works shall, "from time to time, after it shall have been directed to do so by the supervisors by ordinance, invite proposals for supplying to the city and county such materials as may be required for the repair of the public streets or for any improvement thereof, and such proceedings shall be had in awarding contracts therefor as are in this article provided for awarding other contracts." The proceedings referred to in this section are those set forth in sections 14 to 22, chapter 1, article VI, which, as the lower court found in the present case, were not complied with, in that no sealed proposals calling for competitive bidding, for furnishing the materials, were advertised for or secured.

Another provision of the charter (sec. 26, c. 2, art. VI), relating to the definition of terms, and the use of patented pavements in street work in the city and county, provides: "The word 'paved' shall include any pavement of stone, iron, wood, or other material which the supervisors may by ordinance order to be used; but no patented pavement shall be ordered during the existence of the patent therefor, until the owner of such patent shall have transferred to the city and county all right to the use of the same therein, with the privilege to any person to manufacture and lay the same upon the streets under any contract that may be awarded to him with the city and county." The trial court found that the supervisors did not, at any time, order the laying of a patented paving on Mission Street, and that the further provision of the section just quoted relating to the transfer of the right to use the same had not been complied with by petitioner in this case, "except as such transfer may be found in the contract entered into by petitioner and the board of public works."

This contract consisted of two parts. As they appear in the findings the first is a formal agreement between the petitioner and the board of public works, acting for and on behalf of the city and county. It refers to a "License Mixture Agreement" filed by petitioner with the board, which is made a part of the contract, and to a resolution of the board, executing the contract, referring to the license mixture agreement, and approving the specifications therefor. By the agreement petitioner agrees to furnish the city and county the material and the services provided in the license mixture agreement, at the rate of, and the city and county agrees to pay therefor, seven ($7) dollars per ton of said wearing surface. The license mixture agreement, made a part of the contract, contains these provisions: "Whereas, it is deemed advisable by the proper authorities of the city and county of San Francisco, state of California, that portions of Mission Street, and of such other accepted public streets in said city and county as may be determined by the said authorities, be paved with the Bitulithic pavement, under and in accordance with approved specifications, a copy of which is attached to and made a part hereof, and Whereas, the said improvement requires the laying of a certain patented Bitulithic wear-

42 Cal. App.—17

ing surface and seal coat, and Whereas, the undersigned, Warren Brothers Company, is the owner of all patents and processes covering the said Bitulithic pavement, Warren Brothers Company hereby proposes and agrees to furnish to the city and county of San Francisco, at any time up to and including December 31, 1917, the following materials ready for use, as specified and required under and by said specifications: 3. The right to use any and all patents owned or controlled by Warren Brothers Company which are necessary to be used in the laying of said pavement, and the perpetual right to use and repair or reconstruct the patented pavement so constructed. The right of the city and county to repair or reconstruct such pavement with such patented material or other material, is hereby reserved in this proposition to said city and county. 4. . . . This agreement shall inure to the benefit of said city and county of San Francisco and of any person to whom any contract may be awarded by, or entered into with, said city and county of San Francisco for the performance of said work." Then follows full details and specifications relating to the "construction of Bitulithic Wearing Surface," which appears to be the proper name for said patented wearing surface.

We are of the opinion that there was a sufficient compliance with the charter provisions relative to the transfer to the city and county of the right to the use of the patented wearing surface. While the language might be more explicit as to the privilege granted any person to manufacture and lay the same upon the streets under contract awarded to him, or entered into by the city, we think the intention to comply with the requirement of the charter is manifest, and that we are right in so holding.

Much of the argument of counsel in the numerous briefs in this case has been devoted to the question of this use by the city of the patented wearing surface, which was laid on the concrete base, on Mission Street, as reconstructed. On oral argument this question was referred to as the principal contention. [8] That such patented composition, or mixture, may be used, if called for by proper jurisdictional procedure, is settled. (*Nicolson Pavement Co.* v. *Painter,* 35 Cal. 699; *Dunne* v. *Altschul,* 57 Cal. 474; *Sarver* v. *Los Angeles,* 156 Cal. 187, 189, [103 Pac. 917].) The

charter provision we have heretofore quoted provides for
such use in the city and county of San Francisco. Appellant contends that the board of public works, although required to let all contracts to the lowest bidder, may, nevertheless, let a valid contract for improving its streets by a
patent process and subject to a monopoly. Such is undoubtedly the law relating to the purchase of patented
articles generally, such as fire-engines, machinery, furnishings for public buildings, and ordinary supplies. But the
framers of the San Francisco charter had a well-defined
object in view, in the enactment of the section in question,
the purpose of which was to secure active competition,
regardless of the use of a patented pavement in the improvement of its streets. [9] We are not prepared to
hold with appellant that the provision shall apply only in
case of street work on unaccepted streets, in which case
the proceedings are *in invitum*. *All* street work in the
city and county, except, possibly, urgent repairs, shall be
done on the order of the board of supervisors. No patented
pavement shall be ordered by the supervisors until the owner
shall have made the assignment, required by the section,
of the right to use the same, with the privilege to any person to manufacture and lay the same upon the streets
under any contract that may be awarded to him, or entered
into by him with the city and county. This jurisdictional
step taken, the board of public works is in position to
follow the provisions of the charter, in the matter of securing sealed bids for the furnishing of such quantities
of the patented pavement as may be necessary, as in the
case of ordinary supplies. (*Nicolson Pavement Co.* v.
*Painter, supra.*) On such bids being called for the owner
of the patents governing the pavement, and all other bidders, are in position to compete for the contract which
should be awarded the successful bidder in the manner
provided in the contract. To hold otherwise would, in our
judgment, be doing violence to the intent and terms of
the charter.

Two situations are to be dealt with: First, the board of
supervisors did not "order" the reconstruction of Mission
Street; second, the contract between petitioner and the
board of public works was entered into without the formalities required by the charter, although the contract has

been fully performed to the satisfaction of the board, and the city and county has received the full benefit thereof. To meet these situations petitioner relies, first, upon the effect of the ordinance of ratification, adopted after the doubt as to the regularity of the proceedings by the board of public works presented itself, and, second, it invokes the doctrine of equitable estoppel.

After reciting the facts relating to the matter, much as they appear here, the said ordinance ratifies, approves, and confirms the purchase of the paving material by the board of public works, confers authority on said board "to do all of the acts hereinbefore set forth as fully as if such authority had been conferred prior to the doing of said acts," and appropriates "the sum of $7,756 for payment to Warren Brothers Company for the wearing surface material purchased from the said company by said board of public works, etc." [10] We are of the opinion that this ordinance had the effect, contended for by appellant, to cure the omission of the board of supervisors, in the first instance, to order the work of improving the street, and the laying thereon of the patented wearing surface. (*People v. Swift*, 31 Cal. 26, 28.) As an ordinance was necessary in the first instance to inaugurate the work, it was proper that the ratification be in the form required in the original act. When passed its effect was equivalent to a previous authority. It operated upon the action of the board of public works as though the authority had originally been given. (*McCracken* v. *City of San Francisco*, 16 Cal. 591; *Cottman* v. *City and County of San Francisco*, 20 Cal. 96, [81 Am. Dec. 96].)

[11] The contract between petitioner and the city and county, by and through its board of public works, for furnishing the material used in the improvement of Mission Street, did not arise from, or result in, proceedings *in invitum*, whereby any interests of third parties could be affected. In improving one of its accepted streets the municipality was acting more in a proprietary than in a governmental capacity. It was to all intents and purposes caring for its own property as an individual or private corporation would do. "When a municipal corporation engages in ordinary business transactions, such as purchasing supplies, it exercises merely the right of a private

corporation or a natural person; and when making contracts about such matters it is not to be regarded as exercising political or governmental powers; and, like natural persons, it is subject to the principle that after it has received the benefit of a contract within the scope of its power to make, it is estopped from denying its validity in an action based upon such contract.'' (*Contra Costa Water Co.* v. *Breed,* 139 Cal. 432, 436, [73 Pac. 189, 191].)

''Substantially the authorities indicate no different rule in applying the doctrine of estoppel to the acts of individuals or private corporations, than is proper to be applied to the acts of municipal corporations. · There is, however, a distinction suggested, and it is this: That where the contract or agreement upon which recovery is sought is one wholly without the scope of the municipality to make— in other words, is *ultra vires*—then there can be no estoppel; but where the authority exists to make the contract, but the proceedings precedent thereto have been informally taken only, then the rule of estoppel may be made to operate against a municipality as it would against an individual under the same circumstances.'' (*McCormick Lumber Co.* v. *Highland School Dist.,* 26 Cal. App. 641, [147 Pac. 1183].)

The board of supervisors clearly had the general power to provide for the purchase, by the board of public works, of the supplies, including the wearing surface, necessary for the improvement of Mission Street, whatever the contention may be about the manner in which the contract for such supply ought to be made. Even if it be that certain provisions of the charter, or ordinances, were not strictly complied with, the city, under well-settled legal principles, should not be allowed to accept, use, and retain the benefit of petitioner's property, and then refuse to pay for it upon the plea that in making the contract it has not proceeded in strict conformity with some part of the complicated internal machinery of its complex corporate organization. (*Contra Costa Water Co.* v. *Breed, supra; Higgins* v. *San Diego Water Co.,* 118 Cal. 555, [45 Pac. 824, 50 Pac. 670]; *Brown* v. *Board of Education,* 103 Cal. 534, [37 Pac. 503].)

The judgment is reversed.

Richards, J., and Kerrigan, J., concurred.