### TRANSBAY CONST. CO. v. CITY AND COUNTY OF SAN FRANCISCO.

#### No. 21036–S.

District Court, N. D. California, S. D.

Oct. 24, 1940.

434

Samuel S. Stevens, Jerome B. White, and Heller, Ehrman, White & McAuliffe, all of San Francisco, Cal., for plaintiff.

John J. O'Toole, City Atty., and Henry Heidelberg and Dion R. Holm, Deputy City Attys., all of San Francisco, Cal., for defendant.

ST. SURE, District Judge.

Plaintiff, a Delaware corporation, on April 8, 1935, entered into a contract with defendant, through its Public Utilities Commission, agreeing to furnish the necessary labor and materials for the enlargement of O'Shaughnessy Dam at Hetch-Hetchy, California. Defendant agreed to pay for the work upon performance in the manner provided by law and in the specifications. The work was completed and accepted on July 1, 1938. Plaintiff alleges that the reasonable value of the labor and materials furnished is $4,291,628.28, that the defendant paid on account the sum of $3,457,000.69, and that there is still owing the sum of $834,627.59. Defendant asserts that plaintiff is fully paid. The amount in controversy meeting the requirements of the federal statute, jurisdiction is based on diversity of citizenship.

Plaintiff's complaint contains three counts: first, for $450,464.56 damages based upon a claim therefor filed with the Controller of defendant under the provisions of its charter, which claim was rejected; second, for $834,627.59, the balance due for the reasonable value of labor and materials furnished; and third, for $834,627.59, the balance due for labor and materials furnished at an agreed price. Because of the conclusion reached by me, it will be necessary to notice only the first two counts.

Defendant challenges plaintiff's right to sue under count one on the ground that the claim for damages upon which it is founded was not filed within the sixty-day period provided by section 87 of the San Francisco Charter.[1] It is undisputed that the work was completed and accepted on July 1, 1938, from which date the sixty-day period began to run. The claim for damages was filed on October 8, 1938. Under the plain requirement of the charter it is evident that the claim was filed too late. Haigh v. Los Angeles, 139 Cal.App. 595, 599, 600, 34 P.2d 779.

The crucial question in the case is whether plaintiff can recover under quantum meruit, as alleged in the common law count two. The contract contains over 200 closely-typed pages, including "invitation for proposals," "information for bidders," plans and specifications, maps and drawings. It is of the comprehensive government variety, apparently drawn with meticulous care, "watertight in all of its compartments," seeking to cover every possible situation or eventuality, and resolving all doubts in favor of the municipality. This is not said by way of criticism but merely of description. The "invitation for proposals" provided that "said work must be done in accordance with the specifications therefor on file in the office of the Hetch-Hetchy Water Supply to which reference is hereby made, and within the time set in said specifications." The "information for bidders" provided that the bidder must make a careful, personal examination of the proposed work; that the quantities were estimates only, to be used as a basis for comparing bids, the right to increase or decrease the amount of work or materials being specifically reserved to defendant; and that the contractor should make no claim for damages or extra payment.

It is alleged in the complaint and admitted in the answer that "O'Shaughnessy Dam is located at the west end of Hetch-Hetchy Valley in the Sierra Nevada mountains on the Tuolomne River, Tuolomne County, California, about two hundred miles from San Francisco and approximately twelve miles from the terminus of the Sierra Railway at Mather. Because of the inaccessibility of the location of said work, plaintiff was required to construct and maintain dormitories to house the workmen,

[1] "Section 87. All claims for damages against the city and county must be presented to the controller within sixty days after the occurrence from which it is claimed the damages have arisen. Such claims must be verified by the oath of the claimant and must contain the name and address of the claimant, the date and place of the occurrence or injury for which damages are claimed, the nature and amount of said injuries or damages and the items making up said amount; otherwise there shall be no recovery on any such claim or by reason of the said occurrence for which damages are claimed. Ratified by the Legislature, Jan. 26, 1935."

to build and operate a mess-hall, to build and maintain a hospital and supply medical service, and was also required to erect and maintain offices, dwellings, machineshops, storehouses, and to maintain roads and trails during the time required for the performance of said contract." In addition, because of the magnitude and special character of the work, it was necessary for plaintiff to employ and organize a corps of skilled and unskilled workmen, and to assemble and place a lot of heavy machinery. The labor organization had to be kept intact for successful operation of the plant. The heavy equipment and machinery were of such a character that they could not be readily moved to another place, if other work were available. In other words, the man power was organized and the equipment assembled and built for this particular job, and both were intended and necessary for the successful performance of the contract.

Actual work for the enlargement of the dam began on May 14, 1935. According to the plans and specifications, the amount of rock excavation for the foundation of the enlargement was estimated by defendant at approximately 30,000 cubic yards, and the time allowed within which to complete the work was 730 calendar days with a penalty of $400 for each day required thereafter to complete the work. Additional excavation ordered by defendant delayed completion a year, and the work was finally accepted on July 1, 1938. The contractor was directed to excavate a total of approximately 84,000 cubic yards for the dam foundation, the excavation being carried to an average depth of thirty-five feet, or about twice that of the original dam. In other words, the contractor was finally required to excavate 84,000 cubic yards as compared to the original estimate of 30,000 cubic yards, or nearly 200 per cent in excess of the original contract obligation.

Defendant stands upon the strict letter of the contract. It contends that plaintiff took all the risks and must assume all of the losses, if any. Defendant cites cases supporting the rule that "where one engages unconditionally to do an act, performance is not excused because it is prevented by accident or unforeseen contingency not within his control but not amounting to an act of God, and, a fortiori, the fact that the performance of the act is rendered more difficult or expensive by reason of the happening of some unforeseen contingency is no excuse for its nonperformance; nor will it furnish a basis for a claim for extra work or additional compensation."[2]

■■■■ Professor Williston in his work on contracts[3] points out that this was the

---

2 Federal Law of Contracts, Vol. 2, § 473.

3 Williston on Contracts, Rev.Ed., Vol. 6, § 1931: "The law must adopt either a strict rule which will require the parties, when they form a contract, to foresee its consequences as accurately as possible, though at the expense of serious hardship to one of them if unforeseen circumstances render it impossible to perform his promise, or a rule giving an excuse under such circumstances. The early cases accepted the former alternative; the later cases tend to adopt the other. * * * Under the name of implied contracts (quasi contracts), courts have wisely imposed obligations on parties to contracts which they never agreed to assume; and because of fraud, mistake, duress, impossibility and illegality, and of constructive (implied) conditions, have modified contracts or dispensed with their performance, simply because justice required it. As pointed out in the Restatement of Contracts [§ 454], the essence of the modern defense of impossibility is that the promised performance was at the making of the contract, or thereafter became, impracticable owing to some extreme or unreasonable difficulty, expense, injury, or loss involved, rather than that it is scientifically or actually impossible. While the mere fact that performance of a promise is made more difficult and expensive than the parties anticipated when the contract was made will not ordinarily excuse the promisor as is shown by cases too numerous for citation, nevertheless there are other decisions allowing an excuse where very greatly increased difficulty had been caused by facts not only unanticipated but inconsistent with the facts that the parties obviously assumed to exist or to be likely to continue. The true distinction is not between difficulty and impossibility. A man may contract to do what is impossible, as well as what is difficult, and be liable for failure to perform. The important question is whether an unanticipated circumstance has made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract. If so, the risk should not fairly be thrown upon the promisor."

earlier rule. The later cases adopt the rule which makes 'for justice between the parties. "A man may contract to do what is impossible, as well as what is difficult, and be liable for failure to perform. The important question is whether an unanticipated circumstance has made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract. If so, the risk should not fairly be thrown upon the promisor."

There is no question here of fraud nor misrepresentation. There is no doubt that a large amount of extra work was performed by plaintiff and accepted by defendant. Defendant's estimate of the amount of excavation required was, as we have seen, 30,000 cubic yards. Plaintiff admits that defendant co-operated and gave all the information it had regarding the proposed work, and defendant admits that plaintiff could not have made a more accurate estimate upon an independent investigation. It is evident that neither party expected the amount of excavation to run as high as 84,000 cubic yards. Here, I think, is a concrete example of "an unanticipated circumstance" which "made performance of the promise vitally different from what" could "reasonably have been within the contemplation of both parties when they entered into the contract."

The main feature of the contract was the establishment of the foundation for the enlargement of the dam. This was really the initial work of construction. Until it was finished to the satisfaction of defendant the dam itself could not be built. Immediately following the establishment of the plant and the organization of a working crew, the "shooting down" of rock excavation began in the canyon. When the amount of excavation originally contemplated (30,000 cubic yards) was shot down from the canyon walls, the defendant ordered additional excavation. Delay ensued, another lot of excavation was ordered, more delay, and this continued until the contractor was finally required to excavate and remove a total of approximately 84,000 cubic yards of rock. There is no controversy as to these facts, from which it is apparent that defendant unduly interfered with plaintiff's performance of the contract and caused additional expense of construction. Repeated protests, written and oral, were made to defendant regarding the delays occasioned by the increased piecemeal excavation demanded. These protests elicited excuses from the defendant's engineers, but the work of excavating for a foundation for the dam continued intermittently to the end. The contract permitted the granting of additional time to complete performance in the event of unavoidable delays. It further provided for liquidated damages of $400 for each "calendar day by which such completion shall be delayed" beyond 730 calendar days. In this connection it is significant to note that defendant granted to plaintiff extensions aggregating 416 days, and never claimed any liquidated damages. Payments were made by defendant during the progress of the work and upon completion and acceptance, in the total sum of $3,457,000.69.

Under the facts and circumstances shown by the record, I feel that it would be unjust to permit defendant to strictly enforce the contract against plaintiff. Circumstances unanticipated by the parties made radical changes in the character and amount of the work to be performed under the contract, greatly increasing the expense thereof. I think that the contract may be deemed abrogated and plaintiff should be permitted to recover on a quantum meruit basis. Salt Lake City v. Smith, 8 Cir., 104 F. 457; Hayden v. City of Astoria, 74 Or. 525, 145 P. 1072; United States v. Atlantic Dredging Co., 253 U.S. 1, 40 S. Ct. 423, 64 L.Ed. 735; Hollerbach v. United States, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898; Karno-Smith Co. v. United States, 84 Ct.Cl. 110; Lentilhon v. City of New York, 102 App.Div. 548, 92 N.Y.S. 897; City of Richmond v. J. J. Smith & Co., 119 Va. 198, 89 S.E. 123; Drainage District v. Rude, 8 Cir., 21 F.2d 257; United States v. Stage Company, 199 U.S. 414, 26 S.Ct. 69, 50 L.Ed. 251; Freund v. United States, 260 U.S. 60, 43 S.Ct. 70, 67 L.Ed. 131; Cleveland Railway Company v. Moore, 170 Ind. 328, 82 N.E. 52, 84 N.E. 540; Chesapeake & O. Canal Company v. Hill, 15 Wall. 94, 82 U.S. 94, 21 L.Ed. 64.

Defendant pleads as a special defense that no attempt has been made to comply with section 86 of the San Francisco Charter, which reads in part as follows: "No obligation involving the expenditure of money shall be incurred or authorized by any officer, employee, board or commission of the city and county unless the controller first certify that there is a valid appropriation from which the expenditure may be made, and that sufficient unencumbered funds are available in the treas-

ury to the credit of such appropriation to pay the amount of such expenditure when it becomes due and payable."

Should my conclusions be sustained and plaintiff be successful in obtaining a final judgment against defendant for a specified sum of money, the reasonable value of labor and materials furnished, it is probable that defendant will be required to pay the judgment. It is well settled that a municipal corporation cannot, while enjoying the fruits of a properly authorized contract, deny liability on the ground that certain of its charter provisions have not been observed. Morgan v. Board of Education, 136 Cal. 245, 68 P. 703; Contra Costa Water Co. v. Breed, 139 Cal. 432, 73 P. 189; Brown v. Town of Sebastopol, 153 Cal. 704, 96 P. 363, 19 L.R.A.,N.S., 178; Warren Bros. Co. v. Boyle, 42 Cal.App. 246, 183 P. 706. Even where a contract is invalid, the city must pay the reasonable value of the benefits received. Higgins v. San Diego Water Co., 118 Cal. 524, 45 P. 824, 50 P. 670.

The case will be referred to Ernest E. Williams, United States Commissioner, as special master, to receive evidence upon the issues raised by the second cause of action stated in the amended complaint and the answer thereto, and to report thereon to the court with his findings of fact and conclusions of law. This reference includes the matter of an accounting between the parties if that shall be necessary.

Counsel for plaintiff may submit findings of fact and conclusions of law in accordance with the views herein expressed, and also an order of reference to the special master.