CHARLES WURDEMAN, APPELLANT, V. CITY OF COLUMBUS
ET AL., APPELLEES.

FILED JULY 1, 1916.   No. 19508.

1. **Municipal Corporations: STREET IMPROVEMENTS: ESTIMATE OF COST.**
   In making an estimate of the cost of street pavement, a city en-
   gineer is not required to separately estimate the cost of each item
   going to make up the completed whole.

2. ——: ——: CONTRACTS: COMPETITIVE BIDDING.  A contract for
   street pavement is not in violation of the statute relating to com-
   petitive bidding merely because it requires the use of a patented
   top coating.

3. ——: ——: ——: DISCRETION.  The duty of city officers in
   awarding a contract for street paving is not merely ministerial,
   but partakes of a judicial character requiring the exercise of dis-
   cretion.

APPEAL from the district court for Platte county:
GEORGE H. THOMAS and FREDERICK. W. BUTTON, JUDGES.
*Affirmed.*

*A. M. Post* and *C. N. McElfresh,* for appellant.

*Albert & Wagner, Reeder & Lightner* and *W. H. Bailey,*
contra.

MORRISSEY, C. J.

Plaintiff, a taxpayer within paving district No. 1 of the
city of Columbus, brought this action to enjoin the officers
of the city from proceeding under a paving contract en-
tered into with a contractor for the laying of paving with-
in the district, and from levying assessments against the
property within the district, and from issuing, registering,
or negotiating bonds for the purpose of meeting the ex-
penses of the paving.   There was a finding and judgment
for defendants, and plaintiff has appealed.

Columbus is a city of more than 5,000 and less than
25,000 inhabitants, and the public improvement under con-

sideration falls within section 4887, Rev. St. 1913, requiring the city engineer to make estimates of the cost of labor and material when the amount thereof exceeds $200, and submit the same to the city council, and that no contract shall be entered into for any work or improvement for any price exceeding the estimate, and, "in advertising for bids for any such work, the council shall cause the amount of such estimate to be published therewith," and also provides that "such advertisement shall be published at least ten days in some newspaper of general circulation published in the city."

The contract which plaintiff seeks to enjoin calls for the laying of bitulithic pavement. The plaintiff contends that this is without warrant under the statute, "for the reason that no estimate of the cost thereof was made by the city engineer." The engineer did in fact make and submit an estimate of the cost of bitulithic pavement, as well as a separate estimate of the cost of four other kinds of pavement, and bids were asked on each of these. True, he made no separate estimate of the cost of the different items required to make up the completed whole, but this is not required by the statute.

The statute does not require the estimate to be itemized so as to cover the probable cost of the different items to be used in the work. Its language is plain and simple, and the most that can be said of it is that it calls for an estimate of the gross expense. It does not matter so much to the property owner or taxpayer what the expense of each item entering into a given pavement may be, as it does what will be the sum total of its cost and the service it will render, nor does the statute provide by what method the engineer shall arrive at his estimate. There are a number of items to be taken into account in determining the probable cost of a job of paving. It is for the city engineer to make an estimate of the sum total of these items. The bidders will figure the items. One contractor may calculate the cost of grading at one price and another at a different price. One may figure the cost of material

at a different price from another, and so it is with each separate item of the improvement. The estimate fell within the provisions of the statute and error cannot be predicated upon the ruling of the court thereon.

This bitulithic pavement is patented, or at least the process by which it is manufactured is patented, and for that reason is controlled by one firm, Warren Brothers Company, of Boston, and, according to plaintiff's theory, competition for furnishing this kind of pavement was impossible, and therefore the contract is in violation of that section of the statute providing that contracts of this character shall be let to the lowest responsible bidder. There is a diversity of holdings among the courts. In the instant case, as in every other case that has been brought to our attention where this patented article was called for, the manufacturer stood ready and willing to deliver the article to all contractors at the same price. Attached to the plans and specifications was an offer by the patentee to furnish the bitulithic mixture, but the space left in the printed blank for the price at which it would be furnished had not been filled in, and the published invitation for bids did not contain a price stated from the patentee for this mixture. There is testimony that on the day of the letting inquiry was made of the city clerk regarding terms exacted by the patentee, and that the clerk informed the inquirers that the blank offer was the only paper received. It appears, however, that the patentee had in fact caused to be delivered to the clerk an offer, open to all bidders alike, agreeing to furnish the mixture at $1.35 a cubic yard.

As was said in *Whitmore, Rauber & Vicinus v. Edgerton,* 149 N. Y. Supp. 508: "It must be understood that this bitulithic substance is merely a two-inch coating, or top dressing, and forms a very small portion of the entire pavement. The contractors were obliged to use bitulithic for this top dressing, but as to the remainder of the work— the excavations, foundations, curbing, gutters, catch-basins, and the large element of labor—there was no restriction of

any kind imposed in the specifications, and contractors had a right to purchase these other commodities wherever they chose, for there was nothing in the specifications which required them to get these materials from any particular contractor or manufacturer."

The patentees of the article are among the best-known manufacturers of paving materials in the United States. Its offer to sell to any successful bidder was on file with the city clerk, and, although the city clerk by inadvertence had mislaid the offer stating the definite price, the offer without the price stated was on file, and this was notice to all that the patentee stood ready to furnish the mixture. Any contractor desiring to bid might easily have ascertained the terms and price by communicating with the patentee, but the record fails to disclose any effort on the part of any person to do so. In due season the patentee sent to the mayor an offer to furnish the mixture with the price stated. The mayor delivered this offer to the city clerk, who carelessly mislaid it, but there is an utter absence of any showing that either fraud or favoritism entered into the letting of the contract.

Unless we are to hold that by the use of a patented process competition is forbidden, plaintiff's claim of error in this regard must be disregarded. While true that a number of courts hold that the use of a patented article makes competition impossible, yet we think the better reasoned cases hold that, where the patentee is ready and willing to furnish the mixture to all bidders alike, its use is not prohibitive of competition. "The fact that a street is directed to be paved with a patented article does not necessarily prevent competitive bidding." *Whitmore, Rauber & Vicinus v. Edgerton, supra.* In *Saunders v. City of Iowa City,* 134 Ia. 132, and in a note to *Johns v. City of Pendleton,* 46 L. R. A. n. s. 990 (66 Or. 182) may be found exhaustive discussions of this subject, but we refrain from quoting therefrom because it would run this opinion to an unnecessary length.

Plaintiff also claims that an excessive price was awarded as a result of a conspiracy, and he offered some testimony calculated to show that the price asked for the mixture is excessive, but the record discloses that this mixture, or compound, was open to all bidders at the same price, and that it entered into competition with four other and different kinds of pavement. While it is claimed by plaintiff that bitulithic pavement and asphaltic concrete pavement are substantially the same, an examination of the record shows there is a substantial difference between the two. Nothing on which to base a charge of conspiracy or design on the part of any one to favor any particular contractor is shown; but, on the other hand, it appears that the officers of the city exercise their honest judgment in the selection of the material to be used, and that the contract was awarded to the bidder submitting the lowest bid.

"In determining who is the lowest responsible bidder, or the lowest and best bidder, the duty of the board or officer is not merely ministerial, but partakes of a judicial character, requiring the exercise of discretion and judgment." 2 Dillon, Municipal Corporations (5th ed.) sec. 811.

As a concluding assignment of error, plaintiff says it was error on the part of the trial court to deny his request to amend his petition so as to allege the invalidity of the patent held by Warren Brothers Company. The court held that the issues tendered by the proposed amendment were immaterial and insufficient to constitute a cause of action. Surely the validity of this patent could not be tried in this action.

The record is found free from error, and the judgment is

AFFIRMED.

SEDWICK, J., concurring.

When the use of a patented article greatly increases the cost of an improvement, the officers and the property owners interested will not use such articles unless they are very certain that because of the superiority of the im-

provement the additional expense is money well invested. Undoubtedly it rests with them to determine that question, and not for the courts. I do not think that we ought to compel the property owners affected and the public officers to adopt our notions as to the advisability of using a patented article in paving their streets. It appears, however, that some of the bidders were not aware of the fact that this patented article could be obtained at a regular price uniform to all desiring to use it, and that competition was affected by that fact. Although the officers appear to have acted in good faith and without fraud, it is not so clear that the successful bidder did not get a larger price for the work than he could have obtained if the price he paid for the mixture had been known to all bidders and they had the unequivocal information that they could obtain the mixture at the same price. I am not satisfied that there must be positive evidence of fraud to invalidate this contract.

Rose, J., dissenting.

Is the paving contract in controversy valid under a city charter declaring that the manner of procuring pavements shall be "by contract with the lowest responsible bidder?" Rev. St. 1913, sec. 4941. The purpose of the statute is to protect those upon whom the cost of paving falls. To this end competitive bidding is required. Can there be competitive bidding in good faith, within the meaning of the statute, where the greater part of the total expense of the completed pavement must be incurred for a patented article controlled by a monopoly? The contract requires "bitulithic pavement"—a patented article controlled by the patentee. The cost of the bitulithic material is more than half of the entire expense of the paving. The owners of the patented material offered to furnish it to all bidders at the rate of $1.35 a square yard. This price is arbitrarily fixed by the patentee, and is not determined nor affected by competitive bidding among paving contractors. Other items, such as grading, curbing, concrete base, and

labor, may be subjects of competition, but their cost is only a minor part of the total expense. It seems to me the substantial competition demanded by the statute is defeated where the principal item entering into the contract price and representing the greater part of the total expense of the paving is patented and controlled by a monopoly. *Allen v. City of Milwaukee*, 128 Wis. 678, 5 L. R. A. n. s. 680; *Fineran v. Central Bitulithic Paving Co.*, 116 Ky. 495, 3 Am. & Eng. Ann. Cas. 741; *Pollock v. City of Kansas City*, 87 Kan. 205; *Siegel v. City of Chicago*, 223 Ill. 428. The courts deciding these cases took a view at variance with the majority in the present case and adopted a better rule. If defendants are dissatisfied with the city charter, the remedy is different legislation rather than judicial construction.

Fawcett, J.

The courts of other states are hopelessly divided on the principal point involved in this case. The majority opinion follows one line of authorities and the dissenting opinion the other.

I think the cases cited by Judge Rose are based upon better reasoning and safer grounds than those relied upon in the majority opinion.