[Civ. No. 2892.   Third Appellate District.—April 4, 1925.]

## C. W. WOODWORTH, Appellant, v. TOWN OF SEBAS-TOPOL (a Municipal Corporation) et al., Respondents.

[1]   STREET LAW—PATENTED MATERIALS—RIGHT OF MUNICIPALITY TO PRESCRIBE.—To hold that patented materials cannot be specified by a municipality in the doing of street work under the Improvement Act of 1911 (Stats. 1911, p. 730) and amendments thereto would be to exclude all methods of paving which are patented, even though such method, because of its superiority, or even because of its cheapness, would be specially advantageous to the owners of lots liable for the expense of paving, as well as the municipality charged with its maintenance.

[2]   ID.—BONDS FOR STREET WORK—INJUNCTION—TIME ALLOTTED FOR COMPLETION OF WORK—REASONABLENESS OF.—In this action to en-

1.   Municipality's right to contract for patented articles under competitive bidding contract, notes, Ann. Cas. 1916A, 81; Ann. Cas. 1918A, 958; Ann. Cas. 1918C, 451.   See, also, 19 Cal. Jur. 181.

join a municipality and the trustees thereof from issuing bonds for the cost of improvement of certain streets made under the Improvement Act of 1911, it cannot be held on appeal that forty-four days after the execution of the contract to do the work was not a reasonable time within which to complete the work, in the doing of which specified patented materials were required, where neither the terms of the contract nor the extent of the work to be done are shown, and no evidence was produced to show the length of time which was reasonably necessary for the completion of the work.

[3] ID.—COMPLETION OF WORK—REASONABLENESS OF TIME ALLOTTED FOR—QUESTION OF FACT.—In such action, whether or not the time allowed for the completion of the work after the execution of the contract was reasonable is a question of fact and not of law.

[4] ID.—RESTRICTION AS TO PURCHASE OF PATENTED MATERIALS—EFFECT OF.—The fact that the patented materials required in the doing of the work could be purchased from no one but the company holding the patent is not material, otherwise patented materials could not be used, even though authorized by the statute, because the owner of a patent can always control the production and the price of the article patented.

[5] ID.—PROVISION IN SPECIFICATIONS—EFFECT UPON PROCEEDINGS.—A provision in the specifications that "All loss or damage arising from any unforeseen construction or difficulties, either natural or artificial, which may be encountered in the prosecution of the work, shall be borne by the contractor" did not have the effect of invalidating the proceedings under which the work was to be done.

[6] ID.—WARRANT AND RETURN—SECTION 25, IMPROVEMENT ACT OF 1911—CONSTRUCTION.—Under section 25 of the Improvement Act of 1911 the warrant with the original return thereon, after recordation by the superintendent of streets, may be returned to the contractor, as the warrant is the contractor's evidence of his right to collect the unpaid assessments, and it cannot be presumed, in the absence of an express provision to that effect, that it was the legislative intent to require the contractor to surrender possession of the evidence of his right of action.

[7] ID.—RECORD OF RETURN—SUFFICIENCY OF AFFIDAVIT.—The fact that the superintendent of streets omitted the affiant's name at the beginning of the affidavit in the record of the return is not deemed fatal, where, even with the name so omitted, the affidavit clearly shows by whom it was made.

---

(1) 28 Cyc., p. 1027, n. 63.   (2) 28 Cyc., p. 1027, n. 63.   (3) 28 Cyc., p. 1027, n. 63.   (4) 28 Cyc., p. 1027, n. 63.   (5) 28 Cyc., p. 1035, n. 77.   (6) 28 Cyc., p. 1213, n. 81 New.   (7) 28 Cyc., p. 1213, n. 81 New.

APPEAL from a judgment of the Superior Court of Sonoma County.  H. L. Preston, Judge Presiding.  Affirmed.

The facts are stated in the opinion of the court.

E. S. Page for Appellant.

G. W. Libby and H. C. Symonds for Respondents.

FINCH, P. J.—The plaintiff brought this action to enjoin the defendants from issuing bonds for the cost of the improvement of certain streets in the town of Sebastopol. Judgment was entered in favor of defendants and plaintiff has appealed.

The resolution of intention to make the improvement stated that the work would be done under the Improvement Act of 1911 (Stats. 1911, p. 730) and amendments thereto and that serial bonds to represent unpaid assessments would be issued in the manner provided by the Improvement Bond Act of 1915 (Stats. 1915, p. 1441) and amendments thereto. The record does not disclose the terms of the contract under which the improvement was made.

Appellant's first point is that "the proceedings are void because they require the contractor to purchase materials from Warren Brothers at a fixed price, thereby preventing competitive bidding."  The "objection . . . is not that a patented material is specified, but that the proceedings are so framed that only one person or firm can be dealt with."  The resolution of intention prescribes that the street shall be graded, a water-bound macadam four inches in thickness placed thereon, upon which shall be laid a two-inch pavement of "asphaltic concrete, with one and one-half inches of Warrenite Bitulithic wearing surface."  A subsequent clause reads as follows: "Attention is called to Warrenite Bitulithic License Mixture Agreement of Warren Brothers Company, of Boston, Massachusetts, in relation to the above described work, and dated August 22nd, 1921, and on file in the office of the town clerk of said town of Sebastopol."  The agreement referred to in the resolution of intention is in the general form of that considered in *Warren Brothers Co.* v. *Boyle,* 42 Cal. App. 246, 257 [183 Pac. 706].  It recites that it is deemed advisable by the board of trustees to use War-

renite-Bitulithic pavement, that the company is the owner of the patents covering the use of the materials therefor, that ''competitive bidding in the letting of contracts is deemed advisable,'' and contains the following: ''Warren Brothers Company hereby proposes and agrees to furnish to the Town of Sebastopol and to any bidder to whom a contract may be awarded and who shall enter into a contract with said Town of Sebastopol, to pave said roadways with the Warrenite-Bitulithic pavement, and to the owners of lots and lands proposed to be assessed for the improvement of said roadways in said Town of Sebastopol, hereinafter designated as property owners, who may elect to take the work and enter into a contract to pave said roadways with the said Warrenite-Bitulithic pavement, at any time within four (4) months from this date, or at any time thereafter until this offer is withdrawn, or an amended proposition is filed with the proper authorities, the following material ready for use, as specified and required under and by said specifications, and service, with the right to use any or all of the patents, trademarks, or trade names now owned or which may hereafter be owned by Warren Brothers Company, necessary to lay said pavement.'' The agreement stated the price per ton at which the material would be furnished and provided: ''The execution of the contract for the said work . . . shall bind the undersigned Warren Brothers Company to this agreement.''

Certain parts only of the specifications appear in the record. It appears that the following clauses, and in the order here given, are contained therein: ''Bitulithic Cement: Bitulithic cement is produced under the direction, laboratory supervision of, and using ingredients approved by Warren Brothers Company. . . . Warrenite-Bitulithic Wearing Surface, Gravel Aggregate—One and one-half inches: Wearing Surface: On the foundation prepared as hereinbefore specified, shall be laid the Warrenite-Bitulithic wearing surface described below, so as to have a thickness of one and one-half inches after thorough compression. Said wearing surface shall be composed as follows.'' Then follow specifications of the ingredients to compose such wearing surface and the methods of producing, laying and rolling the same, The board of trustees duly advertised for bids for making the proposed improvements and received five bids therefor.

On the 14th of October, 1921, a resolution was adopted awarding the contract to the successful bidder. On the eighth day of the following November this bidder entered into a contract with the superintendent of streets to do the work. There is. no contention that the work was not properly done in strict compliance with the specifications.

*Nicholson Pavement Co.* v. *Painter,* 35 Cal. 699, contains language implying that the governing board of a municipality, in ordering public improvements, cannot specify the use of a patented material which is not available to bidders for the work. In Page's California Street Laws, section 128, referring to the case cited, it is said: "Subsequent cases have confined the doctrine within narrow limits; and from statements of the courts in later cases, there is some question as to whether the early cases would now be followed even within the limits." [1] To hold that patented materials cannot be specified would be to "exclude all methods of paving which were patented, even though such method, because of its superiority, or even because of its cheapness, would be specially advantageous to the owners of lots liable for the expense of paving, as well as the municipality charged with its maintenance." (*Perine C. & P. Co.* v. *Quakenbush,* 104 Cal. 684, 688 [38 Pac. 533]. See, also, 19 Cal. Jur. 181; *Vale* v. *Boyle,* 179 Cal. 180, 186 [175 Pac. 787]; *Sarver* v. *Los Angeles,* 156 Cal. 187, 189 [103 Pac. 917]; *Warren Brothers Co.* v. *Boyle,* 42 Cal. App. 246, 258, and note at page 247 [183 Pac. 706].) The Improvement Act of 1911, section 79, subdivision 6, provides: "The words 'paved' or 're-paved,' as used in this act, shall be held to mean and include pavement of stone, whether paving blocks or macadamizing, or of bituminous rock or asphalt, or of iron, wood or other material, whether patented or not, which the city council shall by ordinance or resolution adopt." In the absence of such a statutory provision authorizing the use of a patented material, it is said that "where . . . the owner of the patent has stipulated with the city that the patented article will be furnished to the successful bidder, without a reservation, the authorities uphold the right to make the contract," citing several cases. (*Great Northern R. Co.* v. *Leavenworth,* 81 Wash. 511, Ann. Cas. 1916D, 239, 243 [142 Pac. 1155].)

The license agreement is dated August 22, 1921. The resolution of intention was adopted August 26, 1921. It fixed

September 19th as the day upon which objections to the proposed improvement would be heard. Bids for doing the work were opened and the contract awarded October 14th and the contract was executed November 8th. Appellant contends that Warren Brothers Company agreed to furnish material during a period of four months only from August 22d and that therefore the contractor was allowed but forty-four days after the execution of the contract in which to purchase the specified materials from the company. It is argued that under such circumstances no one could safely bid for the work without further assurance from the company that it would furnish such materials after the expiration of the four-month period, an assurance which the company could give or refuse at its pleasure, and that therefore free competitive bidding was not possible. In view of the circumstances under which the license agreement was executed and filed, the nature of the work to be done and the length of time required to take the statutory steps leading up to the execution of the contract, it is somewhat uncertain whether the limitation of four months relates to the furnishing of the materials or to the execution of the contract to do the work. Under familiar rules of construction, the license agreement is to be construed most strongly against the company. [2] If it be construed in accordance with appellant's contention, however, it cannot be held on this appeal that forty-four days was not a reasonable time within which to complete the work. Neither the terms of the contract nor the extent of the work to be done are shown. Nor was any evidence produced to show the length of time which was reasonably necessary for the completion of the work. [3] Whether or not the time allowed was reasonable is a question of fact and not of law. It does not appear within what time the work was actually completed, but it was shown that the company at no time withdrew its offer to furnish the required materials at the price stated in the license agreement. [4] The fact that such materials could be purchased from no one but the company is not material, otherwise patented materials could not be used, even though authorized by the statute, because the owner of a patent can always control the production and the price of the article patented.

[5] The specifications provide: "All loss or damage arising from any unforeseen construction or difficulties, either

natural or artificial, which may be encountered in the prosecution of the work, shall be borne by the contractor." Appellant contends that the proceedings are void because the foregoing provision imposes "an unwarranted burden upon the contractor in regard to damages," citing *Blochman* v. *Spreckels,* 135 Cal. 662 [57 L. R. A. 213, 67 Pac. 1061]. In *Stanwood* v. *Carson,* 169 Cal. 640, 650 [147 Pac. 562, 566], a provision substantially the same as that of which complaint is here made was held not to invalidate the proceedings. In that case it is said: "The early tendency toward a rigid strictness in these matters which has found expression in some of the cases, such as *Blochman* v. *Spreckels,* 135 Cal. 664 [57 L. R. A. 213, 67 Pac. 1061], has been much relaxed by later decisions, and wisely so, because it became apparent that a strict enforcement of the street law to its very letter often resulted in depriving street contractors, who had honestly performed their work, of their just compensation. The inevitable result was that subsequent contracts would not be undertaken by such contractors owing to the hazard arising from such strict construction, excepting at largely increased prices, and, in consequence, while in an individual case a property owner might through some technicality escape paying what he should in equity have paid, property owners generally would be compelled to pay excessive prices because of the imminent peril of total loss which confronted contractors."

[6] The act provides for the issuance of a warrant by the superintendent of streets, authorizing the contractor to demand and receive from property owners the amounts of their several assessments for the cost of work done. Section 25 provides: "The warrant shall be returned to the superintendent of streets within thirty days after its date, with a return attached thereto signed by the contractor or his assigns or some person in his or their behalf, verified upon oath, stating the nature and character of the demand. Thereupon the superintendent of streets shall record the return so made with the record of the warrant and assessment either in the margin of said record or in the same book with and immediately following the record of the assessment; . . . and shall sign the record. . . . If any contractor shall fail to return his warrant within the time and in the form provided in this section, he shall thenceforth have no lien upon the

72 Cal. App.—13

property assessed.'' (Stats. 1921, p. 309.) The required return was made in this case and the superintendent of streets recorded the same and signed the record thereof. The original return was then delivered to the agent of the contractor's assignee, who took it away with him. Appellant urges that the statute requires the warrant and the return attached thereto to be filed and left with the superintendent of streets and that therefore the foregoing acts did not constitute the return required by the statute. The statute does not expressly provide that such warrant and return shall be filed, and appellant's argument is based upon the use of the words ''returned'' and ''return'' as used in the act. No authorities are cited, except such as relate to returns of writs or processes in judicial proceedings. The warrant was the contractor's evidence of his right to collect unpaid assessments. That right did not cease with the return required by the statute. Section 27 of the act provides that, at any time after the period of thirty-five days from the date of the warrant, the contractor or his assigns ''may sue, in his own name, the owner of the land, lots or portions of lots, . . . and recover the amount of any assessment remaining unpaid,'' and that, in any suit so brought, ''the said warrant, assessment, certificate and diagram, with the affidavit of demand and nonpayment, shall be held *prima facie* evidence of the regularity and correctness of the assessment and of the prior proceedings and acts of the superintendent of streets and city council upon which said warrant, assessment and diagram are based, and like evidence of the right of the plaintiff to recover in the action.'' It cannot be presumed, in the absence of an express provision to that effect, that it was the legislative intent to require a contractor to surrender possession of the evidence of his right of action.

[7] The verified return, in so far as material here, is as follows:

''J. B. Piatt, being duly sworn, says he is the agent of the assignee of the contractor named in the annexed engineer's certificate, assessment, diagram and warrant. . . .

''UNITED STATES NATIONAL BANK OF PORTLAND, OREGON,

''By J. B. PIATT, Agent.''

In the record of the return made by the superintendent of streets the name "J. B. Piatt" at the beginning thereof was omitted. Subsequent to the recording of the return, upon the hearing of the appeal of plaintiff and others to the board of trustees, the board adopted a resolution directing the superintendent of streets to correct the error in the record by inserting therein the name of "J. B. Piatt." The superintendent thereupon made the correction.

In *A. P. Hotaling & Co.* v. *Brogan,* 12 Cal. App. 500 [107 Pac. 711], the court had under consideration an affidavit which was signed "A. P. Hotaling & Co. By R. M. Hotaling, President." The court said: "That affiant affixed the corporate name, followed as it is—'By R. M. Hotaling, President,' does not change the fact, clearly appearing, that he, Hotaling, personally made the affidavit and was the one who subscribed and swore to it. . . . Nor do we doubt that the test suggested by respondent is here met, namely, that the affidavit must 'be so clear and certain that an indictment for perjury may be sustained upon it if false.'" The fact that the superintendent of streets omitted the affiant's name at the beginning of the affidavit in the record of the return is not deemed fatal. Even with the name so omitted, the affidavit clearly shows by whom it was made. To hold that the omission is fatal would be to return to the technical strictness condemned in *Stanwood* v. *Carson, supra.*

The judgment is affirmed.

Jones, J., *pro tem.,* and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 1, 1925.